UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LESLIE MURILLO,

   Plaintiff,

      v.                                                                                   No. 3:19-cv-01307(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security,

    Defendant.

_____X

**<u>RULING ON PENDING MOTIONS</u>**

This is an administrative appeal following the denial of the plaintiff, Leslie Murillo's, application for Title II disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI). It is brought pursuant to 42 U.S.C. §405(g).[1]

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

his case for a rehearing. [Doc. #11]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #12]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court denies Plaintiff's motion to reverse/remand and grants the Commissioner's motion to affirm.

**LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   a. **Facts**

   Plaintiff filed her DIB and SSI application on April 11, 2012, alleging an onset of disability as of February 1, 2011. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On July 15, 2014, a hearing was held before Administrative Law Judge Ronald J. Thomas ("the ALJ"). On October 28, 2014, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 19, 2016, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. Plaintiff filed an appeal.

   On April 6, 2018, the undersigned granted Plaintiff's motion and remanded the case to the Commissioner for further proceedings. *Murillo v. Berryhill*, 3:16-cv-00403, ECF Doc. #28 (D. Conn. Apr. 6, 2018); R. 963-69. On August 14, 2018, the Appeals Council vacated the ALJ's prior decision and remanded the case to ALJ Thomas for further proceedings consistent with the order of the Court. (R. 977). The Order further stated that Plaintiff filed a subsequent claim for Title XVI benefits on March 1, 2016, and the State agency found her disabled as of March 1, 2016. (R. 977).

   On March 11, 2019, a second hearing was held before ALJ Thomas. On June 5, 2019, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

   Plaintiff was forty-eight years old on the alleged onset of disability date. She has a high school education and past work experience as a nurse's aide and fast food restaurant manager.

Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##11-2; 12-1]. The Court adopts these statements and incorporates them by reference herein.

b. **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2011. (R. 865). At Step Two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease and stenosis of the lumbar spine; narcolepsy; obesity; degenerative joint disease of the hip and knees; fibromyalgia; mood disorder; and anxiety disorder. (R. 865). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 865-67). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> to perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b) except she could occasionally bend, balance, twist, squat, kneel, crawl, climb, but not climb ropes, ladders, or scaffolds; avoid hazards, such as heights, vibration, and dangerous machinery; driving is okay; use of a cane to walk (ambulate) only; capable of simple, routine, repetitive work that does not require teamwork or working closely with the public, and occasional interaction with the public, co-workers, and supervisors.

(R. 868).

At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work. (R. 871). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

5

there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 871-72). Accordingly, the ALJ determined that Plaintiff was not disabled. (R. 872).

Based on the application for DIB and SSI, the ALJ found that Plaintiff was not disabled from February 1, 2011, the alleged onset date, through February 28, 2016. (R. 872). Plaintiff's Title XVI application, granted on March 1, 2016, was affirmed, and the ALJ's decision did not change that determination. (R. 872).

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

### 1. Remand Order

In reviewing Plaintiff's first appeal, this Court found that, at Step Three of the sequential evaluation process, the ALJ did not explain why Plaintiff's impairments did not meet or equal Listing 1.04C, stating

> the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (R. 16). In making this finding, the ALJ stated that the evidence of record would not warrant a conclusion that the requirements of Listing 12.4 and 1.04 were met. (Id.). The ALJ then explains why the specific elements of Listing 12.04 were not satisfied. He does not, however, provide any explanation of why he concluded that Plaintiff did not meet the specific requirements of Listing 1.04.

(R. 967-68). "In sum, there is conflicting evidence as to whether Plaintiff meets or equals Listing 1.04. The ALJ's opinion does not explain how this evidence was assessed with respect to the listing's specific criteria." (R. 968). Accordingly, the Court found that the ALJ's determination was not supported by substantial evidence and remanded the case to the ALJ to explain his Step Three determination as to Listing 1.04C. (R. 970).

The Court has reviewed ALJ Thomas's June 2019 ruling after remand and finds that the ALJ assessed the conflicting evidence in determining whether Plaintiff's impairment met or equaled Listing 1.04C. (R. 865). Although Plaintiff disagrees with the ALJ's analysis of the evidence of record and conclusion that Plaintiff's impairment does not met or equal Listing severity, the Court finds that ALJ has complied with the Court's remand order.

2. **Listing 1.04A and 1.04C**

Plaintiff argues that the ALJ erred at Step Three in finding that Plaintiff's impairment did not meet or medically equal Listings 1.04A or 1.04C, because "to support this finding …, the ALJ cherry-picked the evidence in violation of the remand order." [Doc. #11-1 at 9]. The Commissioner responds that the ALJ complied with the remand order's and his finding is supported by substantial evidence.

At the third step of the evaluation process, the ALJ must determine whether a claimant's impairments meet or medically equal a listed impairment. If an impairment meets or equals a listed impairment, the claimant will be found disabled. 20 C.F.R. §404.1525; 416.925. In order to meet or equal a listing, the impairment "must meet all of the specified medical criteria."

> Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83–19, Dept. of Health and Human Services Rulings 90 (Jan. 1983) ("An impairment 'meets' a listed condition ... only when it manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value").

Sullivan v. Zebley, 493 U.S. 521, 530–31, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) (emphasis in original); *Loescher v. Berryhill*, No. 16-CV-300FPG, 2017 WL 1433338, at *3 (W.D.N.Y. April 24, 2017). The claimant has the burden of showing an impairment meets or equals a listing. *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015).

In making a determination at the third step in the evaluation process, the ALJ is tasked with articulating "the specific reasons justifying his decision that the claimant does or does not meet the relevant listing," and failure to do so can be the basis for remand. *Howarth v. Berryhill*, No. 3:16-CV-1844(JCH), 2017 WL 6527432, at *5 (D. Conn. Dec. 21, 2017). When a court, in reviewing an ALJ's determination at Step Three, is "unable to fathom the ALJ's rationale in relation to evidence in the record," remand is necessary. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). This is true "especially where credibility determinations and inference drawing is required of the ALJ." *Id.* Thus, it is "the ALJ's responsibility – and not the job of the Commissioner's attorney – to build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Loescher*, 2017 WL 1433338, at *3 (internal quotation marks omitted). Nevertheless, when an ALJ's decision excluding an express rationale in support of the Step Three finding contains, overall, "clearly credible evidence" supporting the conclusion, remand is not required. *Berry*, 675 F.2d at 469.

Listing 1.04(A) and (C) require a showing of

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.04(A) and (C).

An Inability To Ambulate Effectively

means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.00 (B)(2)(b)(1).

While the ALJ made no mention of Listing 1.04A in his ruling he clearly made findings that relate to this Listing. *Berry*, 675 F.2d at 469 ("Before turning to the final step of our review we wish to note that here, in spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). The Commissioner argues that Plaintiff "has wholly failed to demonstrate motor and sensory reflex loss as required by the listing [1.04A]." [Doc. #12 at 3]. With regard to 1.04C, the Commissioner also argues that "the ALJ clearly demonstrated how Ms. Murillo did not meet this listing, noting that there was no chronic weakness as the listing requires." [Doc. #12 at 4]. The Court agrees.

The ALJ noted that the treatment records repeatedly state that Plaintiff has 5/5 strength in the lower extremities. (R. 865 (citing Ex. 12F, 22F, 25F; *see e.g.,* R. 462, 734, 739, 753, 837, 846, 850, 852). Indeed, the assessments by Neurosurgeon Dr. David Gimbel, Orthopedic Surgeon Dr. Peter Whang and Neurologists Dr. Steven Novella, Dr. Gary Lian and Dr.

9

Christopher Sinclair support the ALJ's finding that Plaintiff has not shown evidence that she meets the requirements of Listing 1.04A and 1.04C.

Neurosurgeon Dr. Gimbel assessed Plaintiff in July 2013. (R. 740-44). The doctor noted that although Plaintiff "states that she has had problems with ambulation and that she has be[en] prescribed a walker which she has not gotten yet. She walked on her own power into the clinic." (R. 740). His neurologic examination found 4/5 strength (effort dependent), no Hoffman's bilaterally, sensation intact to LT. "BLE (**note: This exam is likely volitional as patient was observed walking into clinic and with this, sitting exam patient should not have walked so easily." (R. 742). The doctor found

> Her CC [chief complaint] follows a non-dermatornal, non radicular pattern which is not explained by her relatively benign MRI findings. Also patient's exam was extremely volitional as it was apparent that she was not giving full effort. Neurology findings of Hoffman's and hyperreflexia not seen on exam today in clinic. There is no operation offered as there is no surgical target on imaging that explains her findings. This was explained in clinic and patient became very emotional. Patient should return to Neurology clinic for further management.

(R. 742 (encounter date 7/17/13)). Plaintiff did not return to Dr. Gimbel for a follow-up neuro-surgical assessment.

Plaintiff was also assessed by Orthopedic Surgeon Dr. Whang in August 2013. (R. 745-49). In addition to finding 5/5 strength, orthopedist Dr. Whang also noted negative straight leg raises, normal tandem gait, normal sensation, no hyperreflexia and negative Hoffman's signs. (R. 747-48). Dr. Whang stated in relevant part,

> [Ms. Murillo] presents today for a surgical evaluation, and while she is in significant pain, her degenerative changes on her MRI are actually quite mild. Again, I do not see any pathology that I feel would benefit from surgical intervention. Obviously, the patient is quite frustrated that she continues to be in pain, but I do not believe that surgery would be expected to bring about any significant relief and actually could make her symptoms worse For this reason, I will recommend that she continue with conservative measures, including physical therapy and pain medications as directed by her primary care physician.

10

(R. 748 (encounter date 8/15/13)). Plaintiff did not return for a follow-up orthopedic surgical assessment.

Neurologist Dr. Steven Novella treated Plaintiff from January 2013 through June 2018, and consistently found 5/5 strength on examination. (R. 462, 734, 739, 751, 753, 756, 837, 846, 850, 1111, 1120, 1130). Neurologist Dr. Gary Lian treated Plaintiff on three occasions in 2012 and consistently found that that her motor, sensory coordination and gait were within normal limits. (R. 712, 713, 716). The doctor encouraged plaintiff to use less narcotic.[3] (R. 712, 713, 716). Neurologist Dr. Christopher Sinclair treated Plaintiff from October 2008 through December 2011 and consistently found normal gait, normal tone and 5/5 strength in all major muscle groups. (R. 359, 363, 366, 371, 374, 378, 382, 719). The Court finds that substantial evidence supports the ALJ's finding.

"For a claimant to show that h[er] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley,* 493 U.S. at 531; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted)("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."). As set forth above, Plaintiff has not shown that her impairment meets *all* of the medical criteria set forth in Listings 1.04A and 1.04C.

---

[3] The record shows that Plaintiff entered New Era Rehabilitation on June 18, 2014, seeking help for opioid dependence x5 years. (R. 1287-1301). She was seeking help for the following substances: cocaine (last use 6/10/14), Oxycodone (last use 6/18/14), and Benzodiazepines-Xanax (last use 6/17/14). (R. 1292). Plaintiff reported that she "started taking prescriptions from her neurologist who was prescribing opioid for her back pain and was abusing them and the doctor closed up and she started abusing it on the streets. She reported taking about 30 mg of Oxycodone and 60 mg Oxycontin daily." (R. 1296).

Nor has Plaintiff established that her impairments equal these Listings. To establish "medical equivalence" to a Listing, a claimant must show "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." *Zebley*, 493 U.S. at 532. Plaintiff offers no substantive argument to show medical equivalence. The Court finds that the ALJ did not err in considering whether Plaintiff's impairments medically equals a listed impairment. Social Security Ruling 17-2p, states in relevant part,

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2P, 2017 WL 392836, at *4 (S.S.A. Mar. 27, 2017). The medical evidence cited above demonstrates that Ms. Murillo's impairments did not medically equal a listed impairment and the ALJ's determination is supported by substantial evidence. Accordingly, the Court finds no error at Step Three of the sequential evaluation process.

3. **The RFC**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she argues that the ALJ erred in his weighing of the opinion evidence and maintains

that the RFC is not supported by substantial evidence[4]. The Commissioner responds that the ALJ properly weighed the medical opinions, and that the assessed RFC is supported by substantial evidence.

A. Evaluation of Opinion Evidence

Plaintiff argues that because the ALJ did not "properly evaluate opinion evidence, and as a result lacked sufficient evidence on which to rely. Instead of seeking medical expert opinion, or clarification from any of Ms. Murillo's doctors, the ALJ substituted his own judgment, doing so erroneously. [Doc. #11-1 at 16].

Here the ALJ assigned "'great weight' to the light residual functional capacity finding and [found] it to be consistent with the record showing conservative treatment, generally normal gait, and good strength." (R. 870).

State Agency Doctors Abraham Bernstein and Meghana Karande

The Court finds no error in the ALJ's assignment of "great weight" to the opinions of State agency doctors Abraham Bernstein and Meghana Karande who reviewed the evidence of record on July 4, 2012 and April 5, 2013, and opined that Plaintiff had the functional capacity to perform light work. (R. 870 (citing Ex. 3A, 4A, 7A, 8A). "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) (citing *Lewis v. Commissioner,* No. 00–CV–1225, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012)("The report of a State agency medical consultant constitutes

---

[4] Plaintiff only challenges the weight assigned to the "opinion evidence as it relates to [her] physical functioning." [Doc. #11-1 at 16].

expert opinion evidence which can be given weight if supported by medical evidence in the record.") "It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability." *Colvin v. Astrue*, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011); *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015)("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.")(quoting 20 C.F.R. §416.927(e)(2)(i)). Such reliance is appropriate where, as here, the opinions of the state agency physicians are supported by the evidence of record. "The hearing officer's choice to accept a non-treating, non-examining physician's assessment is completely permissible within the regulations 'provided there is support for the result in the record.'" *Monroe v. Barnhart*, 471 F. Supp. 2d 203, 212-13 (D. Mass. 2007) (quoting *Shaw v. Sec'y of Health & Human Servs.,* No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994)). For the reasons stated above, the ALJ did not err in finding that treatment records are consistent with the State Agency doctors' assessment that Plaintiff could perform light work with restrictions. (R. 868-71); *see Farrell v. Astrue*, No. 5:10-CV-284, 2011 WL 6941390, at *6, n.4 (D. Vt. Nov. 23, 2011), <u>report and recommendation adopted</u>, No. 5:10-CV-284, 2012 WL 12538 (D. Vt. Jan. 3, 2012) ("[I]n many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of an ALJ's RFC determination. "). Accordingly, the ALJ did not err in assigning great weight to the State Agency Doctors Bernstein and Karande.

B. <u>Adequacy of the RFC</u>

Finally, Plaintiff argues that "numerous providers" overwhelmingly support a finding of disability. [Doc. #11-1 at 17]. The Court disagrees.

14

Plaintiff bears the burden of proving she cannot perform the assessed RFC. *See* 20 C.F.R. §§404.1545; 416.945. She is unable to do that here, and the assessed RFC is supported by substantial evidence. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015)("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."). As set forth above, the treatment records of Neurosurgeon Dr. David Gimbel, Orthopedic Surgeon Dr. Peter Whang and Neurologists Dr. Steven Novella, Dr. Gary Lian and Dr. Christopher Sinclair are substantial evidence supporting the ALJ's physical RFC finding.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's physical RFC and that it is supported by substantial evidence of record.

**III. CONCLUSION**

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46,49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion

is supported by substantial evidence. Accordingly, plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #11]** is **DENIED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #12]** is **GRANTED**.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this 30th day of March 2020, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge